Filed 8/21/13; pub. order 9/5/13 (see end of opn.)
Opinion following remand from Supreme Court

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LORENA ALAMO, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> PRACTICE MANAGEMENT INFORMATION CORPORATION, <br><br> Defendant and Appellant. | B230909 <br><br> (Los Angeles County Super. Ct. No. BC416196) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rex Heeseman, Judge.  Reversed and remanded with directions.

Neufeld, Marks & Gralnek and Paul S. Marks for Defendant and Appellant.

Employment Lawyers Group and Karl Gerber for Plaintiff and Respondent.

_____

Appellant Practice Management Information Corporation (PMIC) appealed the judgment entered in favor of respondent Lorena Alamo following a jury trial on Alamo's causes of action for pregnancy discrimination and retaliation in violation of the California Fair Employment and Housing Act, Gov. Code § 12900 et seq. (FEHA), and wrongful termination in violation of public policy. Among other arguments, PMIC contended that the trial court erred in (1) instructing the jury pursuant to former CACI Instruction Nos. 2430, 2500, 2505, and 2507 that Alamo had to prove her pregnancy-related leave was "a motivating reason" for her discharge, and (2) refusing to instruct the jury pursuant to BAJI Instruction No. 12.26 that PMIC could avoid liability under a "mixed-motive" or "same-decision" defense by proving it would have made the same discharge decision in the absence of a discriminatory or retaliatory motive. We initially affirmed the judgment, and PMIC filed a petition for review with the Supreme Court. After granting the petition for review and deciding a related issue in *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203 (*Harris*), the Supreme Court directed this court to vacate our decision and to reconsider the cause in light of its decision in *Harris*.

In accordance with *Harris*, we now hold that the trial court prejudicially erred in instructing the jury with the former versions of CACI Nos. 2430, 2500, 2505, and 2507 because the proper standard of causation in a FEHA discrimination or retaliation claim is not "a motivating reason," as used in the CACI instructions, but rather "a substantial motivating reason," as set forth in *Harris*. We further hold that PMIC was not entitled to an instruction on the mixed-motive or same-decision defense because it failed to plead that defense or any other affirmative defense alleging that it had a legitimate, non-discriminatory or non-retaliatory reason for its discharge decision in its answer. We accordingly reverse the judgment and remand the matter to the trial court for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.      Civil Action

Following the termination of her employment, Alamo filed a civil action against her former employer, PMIC.  In her complaint, Alamo alleged three causes of action for pregnancy discrimination in violation of the FEHA and the California Constitution, wrongful termination in violation of public policy, and intentional infliction of emotional distress.  After the trial court partially granted and partially denied PMIC's motion for summary adjudication, the case was tried to a jury on Alamo's statutory FEHA claim and common law wrongful discharge claim.

### II.      Trial Evidence

PMIC is a small company that publishes medical coding and compliance books.  Alamo began her employment with PMIC in July 2006 where she worked as a clerk in the collections department.  She was later promoted to the position of lead collections clerk and was primarily responsible for billing and collecting payments from PMIC's largest customers.  Alamo received regular pay raises during her employment, and as of January 2009, her base rate of pay was $18 per hour.  Alamo's direct supervisor was Michelle Cuevas, the Operations Manager.  Cuevas in turn reported to Gregory Trupiano, PMIC's Executive Vice-President, and to James Davis, PMIC's founder and President.

On January 15, 2009, Alamo began a pregnancy-related leave of absence.  Her baby was born approximately two weeks later on January 27, 2009.  On February 18, 2009, Alamo requested an additional six weeks of maternity leave to bond with her baby, which was granted by PMIC.  Alamo was scheduled to return to work on April 22, 2009.

While Alamo was on leave from PMIC, Marcell Moran was hired on a part-time temporary basis to fill Alamo's position.  Alamo had recommended that Moran fill in for her during her leave because Moran previously had worked at PMIC and remained good friends with Alamo.  Moran began working in Alamo's position in February 2009 and was paid $14 per hour for her part-time work.  At that time, Moran was also pregnant with a due date in September 2009.  Moran was planning on moving out of the Los

3

Angeles area before the birth of her baby and only intended to work at PMIC on a temporary basis while Alamo was on leave.

Prior to Alamo's leave of absence, Cuevas had some concerns about Alamo's performance, but did not consider any of these problems to be serious enough to warrant formal discipline. Cuevas testified that there were times when Alamo failed to timely contact customers about invoices that were past due and Cuevas had to remind Alamo to follow up on those accounts. Cuevas also testified that Alamo at times had poor working relationships with other employees, some of whom complained that Alamo treated them rudely. In addition to orally counseling Alamo about improving her interpersonal skills, Cuevas sent an email to her subordinates in January 2007 reminding them to treat all PMIC employees in a professional manner. However, Cuevas never felt that it was necessary to issue Alamo any written warnings about her performance prior to her leave.

During Alamo's leave of absence, Cuevas became aware of other performance problems that caused her more concern. Cuevas specifically testified that she learned Alamo had not taken any action on certain customer accounts with large unpaid invoices even though Cuevas had requested that Alamo resolve those accounts before her leave. Cuevas also testified that Alamo had told her that PMIC could not collect on two outstanding accounts because the customers were no longer in business, which Cuevas later learned was untrue. According to Cuevas, PMIC had to take a loss on some of Alamo's accounts because too much time had passed to collect payment from the customer. Cuevas intended to discuss these recently-discovered performance issues with Alamo once she returned from her leave in April 2009. To that end, Cuevas advised Alamo not to return to work until April 22, 2009, when Cuevas would be back in the office from vacation.

Alamo denied that she had any performance problems at PMIC. She testified that the customer accounts that PMIC was claiming Alamo had neglected were actually assigned to Cuevas and that Cuevas merely had asked Alamo to assist her by following up on certain unpaid invoices, which Alamo did. Alamo also testified that she was never counseled by Cuevas, either orally or in writing, about her interpersonal skills in working with other employees.

In mid-April 2009, approximately one week before her scheduled return date, Alamo requested and received permission from Trupiano to come into the office to have lunch with a coworker, Maria Alcocer. Alamo did not ask Cuevas for permission to visit the office at that time because it was her understanding that Cuevas was on vacation. On April 17, 2009, Alamo had lunch with Alcocer in PMIC's break room. As Alamo was leaving, she had a verbal altercation with Moran, the person filling in for her, in the hallway outside the office. The argument began because Moran wanted to know why Alamo had not given Moran her new cell phone number. According to Moran, Alamo said that she was having a lot of personal problems and did not want to talk to anyone. Alamo also said that she felt Moran was being mean to their coworker, Alcocer. According to Alamo, Moran initiated the argument, yelled at her in an angry manner, and then told Alamo, "Well, that's good, you're going to get fired anyways." Later that day, Alamo contacted both Trupiano and Cuevas by telephone and asked them about Moran's statement that Alamo was going to be fired. Cuevas told Alamo that they would discuss the matter when Alamo returned to work the following week.

Shortly after Alamo left the office, Moran had a separate verbal altercation with Alcocer. Alcocer and Moran had been having a personality conflict for several months that escalated into an argument that day. As described by Alcocer, Moran approached her desk and began yelling at her because Alcocer recently had complained to Cuevas that Moran was being rude to her. Moran told Alcocer that she should talk to Moran directly about any problems between them instead of complaining to Cuevas. After the argument with Moran, Alcocer decided to take a stress-related leave of absence because she felt that Moran and another employee named Elaine Rodriguez were being verbally

5

abusive to her. Alcocer began her leave on April 20, 2009, and she did not return to work until four months later in August 2009.

On April 22, 2009, Alamo returned to work from her maternity leave. After working for about three hours, Alamo was called into a meeting with Cuevas and Trupiano and told that her employment was being terminated. According to Alamo, Cuevas said during the meeting that she felt Alamo was not doing her job and specifically mentioned one unpaid account. There was no mention of Alamo's recent visit to the office for lunch with Alcocer or to her verbal altercation with Moran. There was also no mention of Alamo's pregnancy or maternity leave. At the end of the meeting, Cuevas explained that if Alamo signed a release waiving any claims she might have against PMIC, Cuevas would be able to provide Alamo with a positive employment reference. Alamo, however, refused to sign the release.

Cuevas testified that, as of April 22, 2009, she believed PMIC should terminate the employment of both Alamo and Moran, and she made that recommendation to her superiors, Trupiano and Davis. Cuevas explained that she did not feel that Alamo's prior performance problems, standing alone, were serious enough to warrant termination. However, when Alamo's history of poor performance was considered with her recent act of insubordination in visiting the office without Cuevas' permission and then having a verbal altercation with a coworker, Cuevas felt that termination was warranted. Cuevas admitted that she did not talk to Alamo about what happened during the altercation before deciding that Alamo should be discharged. Cuevas further admitted that Alamo had received permission to visit the office from Trupiano, but testified that Alamo nevertheless was insubordinate in ignoring Cuevas' instruction that Alamo not return to work until the following week. Cuevas also stated that she believed Alamo knew that Cuevas would not have allowed her to come into the office when Cuevas was not there given the ongoing conflict between Alcocer and Moran. Cuevas testified that her recommendation to discharge Alamo had nothing to do with her pregnancy or maternity leave, but rather was based solely on Alamo's performance and insubordination issues.

6

Trupiano and Davis were both involved in the final decision to terminate Alamo's employment. Trupiano testified that he agreed with Cuevas that Alamo should be discharged based on her poor work performance and insubordination, but decided to defer to Davis as to whether Moran also should be discharged given that she had no other disciplinary issues. Davis testified that he made the decision to terminate Alamo's employment based solely on her performance issues in neglecting her assigned customer accounts, her act of insubordination in visiting the office without Cuevas's permission, and her misconduct in engaging in a verbal altercation with a coworker. Davis testified that he decided not to discharge Moran for her involvement in the altercation because it was her first incident of inappropriate conduct. At trial, both Davis and Trupiano denied that Alamo was terminated for any reason related to her pregnancy or maternity leave. Following Alamo's discharge, PMIC decided to provide her with one month of severance pay not conditioned upon the signing of any release.

## III. Jury Verdict and Attorney's Fees Award

At the conclusion of the trial, the jury returned a general verdict in favor of Alamo and awarded her damages in the amount of $10,000. With respect to Alamo's request for punitive damages, however, the jury found that she failed to prove by clear and convincing evidence that PMIC acted with malice, oppression, or fraud. Following the verdict, the trial court granted Alamo's motion for attorney's fees and costs as the prevailing plaintiff under the FEHA and awarded her counsel attorney's fees in the amount of $50,858.44.

## IV. PMIC's Appeal

PMIC filed a timely notice of appeal. On September 24, 2012, we affirmed the judgment in favor of Alamo. While recognizing that related instructional issues were pending before the Supreme Court in *Harris* that could inform this matter, we initially concluded that the trial court did not err in instructing the jury on the standard of causation in Alamo's FEHA-based claims, and in refusing to instruct the jury on the mixed-motive or same-decision defense. On January 23, 2013, the Supreme Court

7

granted PMIC's petition for review and deferred further action in the matter pending disposition of the related issues in *Harris*. On May 22, 2013, following its decision in *Harris*, the Supreme Court transferred the matter to this court with directions to vacate our decision and to reconsider the cause in light of the *Harris* decision.

## DISCUSSION

PMIC raises two instructional error arguments on appeal. First, PMIC argues that the trial court prejudicially erred in instructing the jury pursuant to former CACI Nos. 2430, 2500, 2505, 2507, and 2527 that Alamo had to prove her pregnancy or pregnancy-related leave was "a motivating reason" for her discharge, rather than the "but for" cause of her discharge. Second, PMIC asserts that the trial court prejudicially erred in refusing to instruct the jury pursuant to BAJI No. 12.26 that PMIC could avoid liability under a mixed-motive defense by proving it would have made the same discharge decision even in the absence of any discriminatory or retaliatory motive.

## I.      Relevant Jury Instructions

The trial court instructed the jury on the essential elements of Alamo's causes of action with former versions of CACI No. 2430 (wrongful discharge in violation of public policy), CACI No. 2500 (disparate treatment under FEHA), CACI No. 2505 (retaliation under FEHA), and CACI No. 2527 (failure to prevent discrimination or retaliation under FEHA). With respect to CACI Nos. 2430, 2500, and 2505, the trial court instructed the jury that Alamo had to prove, among other elements, that her pregnancy or taking of a pregnancy-related leave was "a motivating reason" or "a motivating factor" for her discharge. With respect to CACI No. 2527, the trial court instructed the jury that Alamo had to prove, among other elements, that she was subjected to discrimination or retaliation "because" she took a pregnancy-related leave. The trial court also instructed the jury on the definition of "a motivating reason" with CACI No. 2507, stating that "[a] motivating reason is a reason that contributed to the decision to take certain actions even though other reasons also would have contributed to the decision."

8

The trial court refused PMIC's request that CACI Nos. 2430, 2500, and 2505 be modified to state that Alamo must prove her pregnancy or taking of a pregnancy-related leave was "a substantial motivating reason," as opposed to "a motivating reason," for her discharge. The trial court also refused PMIC's request that CACI No. 2507's definition of "a motivating reason" be modified to state that if the same decision would have been made in the absence of any discriminatory or retaliatory motive, then discrimination or retaliation was not a substantial motivating reason for the decision. Finally, the trial court refused PMIC's request that the jury be instructed on the mixed-motive or same-decision defense with BAJI No. 12.26, which states, in pertinent part: "If you find that the employer's action, which is the subject of plaintiff's claim, was actually motivated by both discriminatory and non-discriminatory reasons, the employer is not liable if it can establish by a preponderance of the evidence that its legitimate reason, standing alone, would have induced it to make the same decision."[1]

## II.     Standard of Review

"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him or her which is supported by substantial evidence." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.) A court may refuse a proposed instruction that incorrectly states the law or is argumentative, misleading, or incomplete. (*Shaw v. Pacific Greyhound Lines* (1958) 50 Cal.2d 153, 158; see also *Harris v. Oaks Shopping Center* (1999) 70 Cal.App.4th 206, 209 ["[i]rrelevant, confusing, incomplete or misleading instructions need not be given"].) A court also may refuse an instruction requested by a party when the legal point is adequately covered by other instructions given. (*Arato v. Avedon* (1993) 5 Cal.4th 1172, 1189, fn. 11.)

---

[1]     PMIC requested that the jury be instructed with BAJI No. 12.26 in a motion in limine filed approximately one month prior to the originally scheduled trial date. Although the record on appeal does not include the trial court's ruling on the motion, it appears from the court's discussion with counsel at a pretrial hearing on jury instructions that the court denied PMIC's request.

"The propriety of jury instructions is a question of law that we review de novo. [Citation.]" (*Cristler v. Express Messenger Systems* (2009) 171 Cal.App.4th 72, 82.) When the contention on appeal is that the trial court failed to give a requested instruction, we review the record in the light most favorable to the party proposing the instruction to determine whether it was warranted by substantial evidence. (*Ayala v. Arroyo Vista Family Health Center* (2008) 160 Cal.App.4th 1350, 1358.) In the event the trial court erred, "[a] judgment may not be reversed for instructional error in a civil case 'unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' [Citation.]" (*Soule v. General Motors Corp.*, *supra*, 8 Cal.4th at p. 580.) "A 'miscarriage of justice' exists when, after examining all the evidence, we conclude ""it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error.""" [Citation.]" (*Weaver v. Chavez* (2005) 133 Cal.App.4th 1350, 1356.)

## III.    The *Harris* Decision

Like Alamo, the plaintiff in *Harris* filed suit against her former employer, the City of Santa Monica (the City), for pregnancy discrimination in violation of the FEHA after the City terminated her employment. (*Harris*, *supra*, 56 Cal.4th at p. 211.) In its answer to the plaintiff's complaint, the City denied her allegations and asserted as an affirmative defense that it had legitimate, non-discriminatory reasons to discharge her as an at-will, probationary employee. (*Id.* at p. 213.) At trial, the City asked that the jury be instructed on the mixed-motive defense with BAJI No. 12.26. The trial court refused to give the requested instruction, and instead instructed the jury pursuant to former CACI No. 2500 that the plaintiff had to prove her pregnancy was a "'motivating factor/reason for the discharge.'" (*Ibid.*) By a special verdict, the jury found that the plaintiff's pregnancy was a motivating reason for the City's decision to discharge her and awarded her damages. (*Ibid.*) The Court of Appeal reversed the judgment and remanded for a new trial on the ground that the requested mixed-motive instruction in BAJI No. 12.26 was an

10

accurate statement of California law and the refusal to give the instruction was prejudicial error. The Supreme Court granted the plaintiff's petition for review. (*Id*. at p. 214.)

In *Harris*, the Supreme Court described the central question before it as follows: In an employment discrimination action brought under the FEHA, "[w]hat is the trier of fact to do when it finds that a mix of discriminatory and legitimate reasons motivated the employer's decision?" (*Harris*, *supra*, 56 Cal.4th at p. 215.) In answer to that question, the Supreme Court held that, "[w]hen a plaintiff has shown by a preponderance of the evidence that discrimination was a substantial factor motivating his or her termination, the employer is entitled to demonstrate that legitimate, nondiscriminatory reasons would have led it to make the same decision at the time. If the employer proves by a preponderance of the evidence that it would have made the same decision for lawful reasons, then the plaintiff cannot be awarded damages, backpay, or an order of reinstatement. However, where appropriate, the plaintiff may be entitled to declaratory or injunctive relief. The plaintiff also may be eligible for an award of reasonable attorney's fees and costs . . . ." (*Id*. at p. 241.) Because the jury in *Harris* was not properly instructed on these legal principles, the Supreme Court affirmed the Court of Appeal's judgment overturning the jury's damages verdict and remanded the matter for further proceedings consistent with its opinion. (*Id*. at pp. 241-242.)

In addressing the specific instructional error issues that were raised in *Harris*, the Supreme Court reached three legal conclusions that guide our resolution of this appeal. First, the Court concluded that the FEHA's prohibition on discrimination in employment "because of" a person's protected characteristic (Gov. Code, § 12940, subd. (a)) means that a plaintiff alleging unlawful discrimination must "show that discrimination was a *substantial* motivating factor, rather than simply *a* motivating factor," in the disputed employment decision. (*Harris*, *supra*, 56 Cal.4th at p. 232.) Because the "prohibition on discrimination is not limited to instances where discrimination is a 'but for' cause of the employment decision," however, the plaintiff is not required to prove "but for" causation to establish liability under the FEHA. (*Id*. at p. 230.) The jury in *Harris* erroneously "was instructed under [former] CACI No. 2500 to determine whether discrimination was

11

'a motivating factor/reason' for [the plaintiff's] termination," and instead should have been instructed to "determine whether discrimination was 'a substantial motivating factor/reason'" for the termination decision. (*Id*. at p. 232.)

Second, the Supreme Court concluded that where the plaintiff has proven that discrimination on the basis of a protected characteristic was a substantial motivating factor in the adverse employment action, a showing by the employer that it would have made the same decision in the absence of discrimination "is not a complete defense to liability." (*Harris*, *supra*, 56 Cal.4th at p. 225.) However, a same-decision showing by the employer may preclude an award of reinstatement, backpay, or damages and limit the plaintiff's available remedies to declaratory or injunctive relief, and where appropriate, an award of reasonable attorney's fees and costs. (*Id*. at pp. 234-235.) Accordingly, when supported by the evidence, "a jury in a mixed-motive case alleging unlawful termination should be instructed that it must find the employer's action was substantially motivated by discrimination before the burden shifts to the employer to make a same-decision showing, and that a same-decision showing precludes an award of reinstatement, backpay, or damages." (*Id*. at p. 241.)

Third, the Supreme Court concluded that "[b]ecause the burden is on a defendant to make a same-decision showing, it should plead this defense" in its answer. (*Harris*, *supra*, 56 Cal.4th at p. 240.) "In other words, if an employer wishes to assert the defense, it should plead that if it is found that its actions were motivated by both discriminatory and nondiscriminatory reasons, the nondiscriminatory reasons alone would have induced it to make the same decision." (*Ibid*.) In *Harris*, the City did not plead the same-decision defense in its answer to the complaint. However, the City did plead that "'[a]ny alleged adverse employment actions of which plaintiff complains … were not based on plaintiff's gender and/or sex, pregnancy or any other alleged discriminatory practice, but instead were based on one or more legitimate nondiscriminatory reasons. Nor were any of the employment actions of defendant taken under pretext.'" (*Ibid*.) The Court reasoned that this asserted defense was sufficient to "put [the plaintiff] on notice that the City intended to defend on the basis that it had not discriminated against her and had a legitimate reason

for discharging her," and was consistent with the City's defense at trial. (*Ibid.*) Under such circumstances, the Court determined that "the fact that the City did not plead a same-decision defense did not adversely affect [the plaintiff's] substantial rights, and the omission did not bar the trial court from giving a same-decision instruction." (*Ibid.*)

## IV. The Trial Court Erred, In Part, In Instructing The Jury

### A. The trial court erred in instructing the jury with former CACI Nos. 2430, 2500, 2505, and 2507.

PMIC contends that the trial court erred in instructing the jury on the standard of causation in a FEHA-based claim because the CACI instructions given to the jury did not express the "but for" standard of causation required under the FEHA. PMIC argues that an employee alleging a discriminatory or retaliatory discharge in violation of the FEHA must prove his or her protected status or activity was the "but for" cause of the discharge rather than "a motivating reason" for the discharge. PMIC also asserts that the failure to properly instruct the jury on the standard of causation constitutes reversible error.

The Supreme Court in *Harris* rejected the specific causation argument that PMIC is raising here. As discussed, the Court in *Harris* held that the plaintiff in an employment discrimination action arising under the FEHA is not required to prove "but for" causation to establish liability, but rather must show by a preponderance of the evidence that discrimination was a "substantial motivating factor" in the adverse employment decision. (*Harris*, *supra*, 56 Cal.4th at pp. 230-232.) In rejecting a "but for" standard of causation, the Supreme Court reasoned that, "[g]iven the FEHA's statement of its purposes and the harms it sought to address, we cannot ascribe to the Legislature an intent to deem lawful any discriminatory conduct that is not the 'but for' cause of an adverse employment action against a particular individual." (*Id.* at p. 230.) As the Court further observed, "discrimination can be serious, consequential, and even by itself determinative of an employment decision without also being a 'but for' cause." (*Id.* at p. 229.) Thus, contrary to PMIC's primary argument on appeal, the trial court did not err in failing to instruct the jury on a "but for" standard of causation for Alamo's FEHA-based claims.

13

In light of the holding in *Harris*, however, we conclude that the trial court did err in instructing the jury with the former versions of CACI Nos. 2430, 2500, 2505, and 2507 because the instructions required Alamo to prove that her pregnancy or pregnancy-related leave was "a motivating reason" for her discharge, rather than "a substantial motivating reason" for her discharge. Although Alamo contends that a jury in an employment discrimination case would not draw any meaningful distinction between "a motivating reason" and "a substantial motivating reason" in deciding whether there was unlawful discrimination, the Supreme Court reached a contrary conclusion in *Harris*. The Court specifically concluded that "[r]equiring the plaintiff to show that discrimination was a *substantial* motivating factor, rather than simply *a* motivating factor, more effectively ensures that liability will not be imposed based on evidence of mere thoughts or passing statements unrelated to the disputed employment decision." (*Harris*, *supra*, 56 Cal.4th at p. 232.) While declining to opine "on what evidence might be sufficient to show that discrimination was a substantial factor motivating a particular employment decision," the Court held that the jury in *Harris* should not have been instructed with the "a motivating factor/reason" language of CACI No. 2500, and in the event of a retrial, "the jury should instead determine whether discrimination was 'a substantial motivating factor/reason'" in the discharge decision. (*Ibid.*) Consequently, the former versions of CACI Nos. 2430, 2500, 2505, and 2507 given to the jury in this case did not reflect the proper standard of causation in a FEHA discrimination or retaliation claim, as articulated in *Harris*.[2]

---

[2] Following the *Harris* decision, CACI Nos. 2430, 2500, 2505, and 2507 were each revised by the Judicial Council of California in June 2013 to replace the phrase "a motivating reason" with the phrase "a substantial motivating reason." CACI No. 2507 was further revised to state that "[a] 'substantial motivating reason' is a reason that actually contributed to the [adverse employment action]. It must be more than a remote or trivial reason. It does not have to be the only reason motivating the [adverse employment action]."

14

## B. The trial court did not err in instructing the jury with former CACI No. 2527.

We reach a different conclusion, however, with respect to former CACI No. 2527 which describes the elements of a FEHA claim for failure to prevent discrimination or retaliation. The version of CACI No. 2527 given to the jury in this case did not use the phrase "a motivating reason" or "a motivating factor" in setting forth the standard of causation. Instead, the instruction required Alamo to prove, among other elements, that "she was subject to discrimination or retaliation because she took a leave for pregnancy, childbirth or related medical conditions," and that "PMIC failed to take reasonable steps to prevent that discrimination or retaliation" from occurring.

The element requiring Alamo to establish that PMIC discriminated or retaliated against her "because" she took a pregnancy-related leave is consistent with the express language of the FEHA which prohibits discrimination "because of" a person's protected characteristic (Gov. Code, § 12940, subd. (a)) and retaliation "because the person has opposed any practices forbidden" under the statute (Gov. Code, § 12940, subd. (h)).[3] While the *Harris* decision considered the meaning of the phrase "because of" as used in the FEHA's anti-discrimination provision and concluded that it meant "a substantial motivating factor," it did not suggest that an instruction which used the phrase "because of" in setting forth the standard of causation for a failure to prevent discrimination claim would be inaccurate or incomplete. Therefore, consistent with the language of the

---

[3] PMIC suggests that a separate element in CACI No. 2527 requiring Alamo to prove that the failure to prevent discrimination or retaliation was "a substantial factor in causing her harm" is equivalent to the disputed element in the other CACI instructions requiring Alamo to prove that her pregnancy-related leave was "a motivating reason" for her discharge. However, the "substantial factor in causing harm" element in CACI No. 2527 does not concern the causal relationship between the adverse employment action and the plaintiff's protected status or activity. Rather, it concerns the causal relationship between the discriminatory or retaliatory conduct, if proven, and the plaintiff's injury. CACI Nos. 2500 and 2505 each contain a similar separate element requiring the plaintiff to prove that the unlawful conduct "was a substantial factor in causing [the plaintiff's] harm."

15

FEHA, the version of CACI No. 2527 given to the jury in this case was a correct statement of the law.[4]

**C.     The trial court did not err in failing to instruct the jury with BAJI No. 12.26.**

PMIC also argues that the trial court erred in refusing its request to instruct the jury on the mixed-motive or same-decision defense with BAJI No. 12.26. PMIC asserts that had the jury been instructed on the availability of the mixed-motive defense as a complete defense to liability, it could have found in favor of PMIC on each claim based on evidence that the same decision to discharge Alamo would have been made absent any discriminatory or retaliatory motive. Alamo counters that the trial court did not err in refusing PMIC's request for a mixed-motive instruction because the case was tried by both parties as a single motive, not a mixed motive, case. Alamo further contends that PMIC waived its right to assert the mixed-motive defense at trial by failing to raise it as an affirmative defense in its answer. In accordance with *Harris*, we conclude that PMIC's failure to plead the mixed-motive or same-decision defense in its answer constituted a waiver of the defense at trial, and thus, the trial court did not err in refusing to instruct the jury on the defense.[5]

---

**4**     CACI No. 2527 was also revised by the Judicial Council of California in June 2013, but without reference to the *Harris* decision. The current version of the instruction fails to set forth any independent standard of causation, and instead, states that the plaintiff must prove, among other elements, that he or she "was subjected to [harassment/discrimination/retaliation] in the course of employment." As reflected in the Use Notes to CACI No. 2527, the current version of the instruction should only be given after the appropriate instructions on the underlying claim for harassment, discrimination or retaliation, which separately describe the standard of causation.

**5**     As previously noted, the record on appeal does not include the trial court's ruling on PMIC's request for a mixed-motive instruction, though it appears from the reporter's transcript of the trial proceedings that the court denied the request. While the reason for the denial is not disclosed in the record, we review a trial court's ruling, not its reasoning, and we may uphold the ruling "on any basis presented by the record whether or not relied upon by the trial court." (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243,

16

As a preliminary matter, we reject PMIC's claim that the jury could have found no liability on the part of PMIC had it been properly instructed on the mixed-motive defense at trial. As discussed, the Supreme Court in *Harris* held that the mixed-motive defense is available under the FEHA, but only as a limitation on remedies and not as a complete defense to liability. (*Harris*, *supra*, 56 Cal.4th at pp. 232-235.) Consequently, when the plaintiff proves by a preponderance of the evidence that discrimination was a substantial motivating factor in the adverse employment decision, the employer is liable under the FEHA. When the employer proves by a preponderance of the evidence that it would have made the same decision even in the absence of such discrimination, the employer is still liable under the FEHA, but the plaintiff's remedies are then limited to declaratory or injunctive relief, and where appropriate, attorney's fees and costs. (*Id*. at p. 241.) As presently drafted, BAJI No. 12.26 does not accurately set forth the parameters of the defense as articulated by the Supreme Court, but rather states that, in a mixed-motive case, "the employer is not liable if it can establish by a preponderance of the evidence that its legitimate reason, standing alone, would have induced it to make the same decision." By providing that the mixed-motive defense, if proven, is a complete defense to liability, PMIC's requested instruction directly conflicts with the holding in *Harris*.

In any event, PMIC was not entitled to an instruction on the mixed-motive defense as a potential limitation on remedies because it did not plead the defense in its answer to Alamo's complaint, nor did it assert as an affirmative defense that it had lawful reasons for discharging her. As discussed, the Supreme Court in *Harris* concluded that the mixed-motive defense is an affirmative defense that should be pleaded by the employer in its answer if it seeks to assert the defense at trial. (*Harris*, *supra*, 56 Cal.4th at p. 240; see also Code Civ. Proc., § 431.30, subd. (b)(2) ["answer to a complaint shall contain . . . [a] statement of any new matter constituting a defense"].) Where an employer fails to plead the mixed-motive defense in its answer to the plaintiff's complaint, the trial court

252, fn. 1; see also *Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517 ["we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself"].)

is not precluded from instructing the jury on the defense provided that the employer's properly pleaded affirmative defenses placed the plaintiff on notice of its intent to defend on the basis that it had not discriminated against the plaintiff and had legitimate reasons for the adverse employment decision. (*Harris*, *supra*, at pp. 239-240.) As the Supreme Court reasoned, "[t]he primary function of a pleading is to give the other party notice so that it may prepare its case [citation], and a defect in a pleading that otherwise properly notifies a party cannot be said to affect substantial rights." (*Id*. at p. 240.)

In this case, however, PMIC's answer is devoid of any affirmative defense that would have placed Alamo on notice that it intended to defend on the basis that it had legitimate, non-discriminatory or non-retaliatory reasons for its discharge decision. In its answer to Alamo's unverified complaint, PMIC generally denied the allegations in the complaint and specifically denied that Alamo was damaged or injured in any sum, or at all. PMIC also asserted the following affirmative defenses: failure to state facts sufficient to constitute a cause of action; failure to mitigate damages; unconstitutionality of emotional distress damages; unconstitutionality of punitive damages; and workers' compensation preemption. PMIC never asserted as an affirmative defense that it did not discriminate or retaliate against Alamo, that it acted lawfully in terminating her employment, or that it had legitimate reasons for any adverse employment decision. There is also nothing in the record to suggest that PMIC ever sought leave to amend its answer to assert a mixed-motive or other related defense. Instead, the record reflects that the first time PMIC raised the mixed-motive or same-decision defense was in a motion in limine filed approximately one month before the originally scheduled trial date.

In the absence of any affirmative defense in PMIC's answer indicating that it intended to assert at trial that it had legitimate reasons for discharging Alamo, we cannot conclude that PMIC's failure to plead the mixed-motive defense did not adversely affect Alamo's substantial rights. Under these circumstances, PMIC waived its right to assert the mixed-motive or same-decision defense at trial, and the jury was precluded from considering the defense in deciding whether to award Alamo damages. The trial court's failure to give a mixed-motive instruction accordingly did not constitute error.

18

## V.    Reversal and Remand

In sum, we conclude that the trial court erred in instructing the jury with former CACI Nos. 2430, 2500, 2505, and 2507, but did not err in instructing the jury with former CACI No. 2527 or in refusing to instruct the jury with BAJI No. 12.26.  We further conclude that the trial court's instructional error with respect to former CACI Nos. 2430, 2500, 2505, and 2507 was prejudicial because the proper standard of causation in a FEHA discrimination or retaliation claim is not "a motivating reason," as stated in the instructions, but rather "a substantial motivating reason," as set forth in *Harris*.

We therefore must reverse the judgment and the award of attorney's fees in favor of Alamo and remand the matter for retrial.  On retrial, the trial court must instruct the jury on the proper standard of causation for Alamo's claims in accordance with the legal principles set forth in *Harris* and this opinion.[6]  However, PMIC is precluded from asserting the mixed-motive or same-decision defense on retrial, and the jury should not be instructed on the defense as a potential limitation on remedies.[7]

---

[6]    On retrial, the trial court may instruct the jury with the current versions of CACI Nos. 2430, 2500, 2505, 2507, and 2527, which, as noted, were revised following the *Harris* decision.  Because the revised version of CACI No. 2527 does not include an independent standard of causation, however, it should be given in conjunction with the revised instructions on the underlying discrimination and retaliation claims, which do set forth a standard of causation as articulated in *Harris*.

[7]    In light of our disposition, we need not address PMIC's remaining argument as to whether the general verdict rendered by the jury supported the attorney's fees award.

## DISPOSITION

The judgment and attorney's fees award are reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion. Each party shall bear its own costs on appeal.


ZELON, J.


We concur:


PERLUSS, P. J.


WOODS, J.

Filed 9/5/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LORENA ALAMO, | B230909 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC416196) |
| v. | |
| PRACTICE MANAGEMENT INFORMATION CORPORATION, | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
| Defendant and Appellant. | |

THE COURT:

The opinion in this case filed August 21, 2013 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the requests of interested third parties pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

_____

PERLUSS, P. J.,                                                                                     ZELON, J.