Filed 6/4/21; Certified for Publication 6/24/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROBERT SWANSON et al., | B294181 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC571451) |
| v. | |
| THE MARLEY-WYLAIN COMPANY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, C. Edward Simpson, Judge.  Reversed and remanded.

Horvitz & Levy, Curt Cutting, Dean A. Bochner; Manning Gross & Massenburg and David M. Glaspy for Defendant and Appellant.

Waters Kraus & Paul and Michael B. Gurien for Plaintiffs and Respondents.

_____

Robert Swanson worked as a plumber at Thomas Plumbing & Heating in Michigan from 1969 to 1976. During that time, he was exposed to asbestos when working with boilers manufactured by Weil-McLain Company, Inc. (now a division of The Marley-Wylain Company (MW)).[1] Swanson's occupational asbestos exposure continued at other jobsites until he retired in 2005, though after 1976 he was never again exposed to asbestos supplied by or contained in products manufactured by Weil-McLain. Swanson was diagnosed with mesothelioma in 2014. In 2015, he filed suit against a number of defendants, including MW, for his injuries.[2]

Swanson's exposure to asbestos supplied by or in products manufactured by Weil-McLain occurred entirely in Michigan. On that basis, MW moved the trial court for an order that Michigan law applied to Swanson's claims against MW. The trial court denied MW's motion. MW sought, and we granted, a peremptory writ of mandate ordering the trial court to vacate its order denying MW's motion and to issue a new order granting the motion. (*The Marley-Wylain Co. v. Superior Court* (Mar. 24, 2016, B267711) at p. 8 [nonpub. opn.] (*MW I*).)

---

[1] The Marley Company, LLC acquired Weil-McLain's successor, Wylain, Inc., in 1980. In discovery responses, Marley-Wylain indicated that Weil-McLain is a division of The Marley-Wylain Company, which is a wholly owned subsidiary of The Marley Company, LLC.

[2] Swanson died on March 2, 2016. In an amended complaint following Swanson's death, his son, Shawn, identified himself as Swanson's successor-in-interest and added wrongful death allegations.

Swanson's claims against MW were tried to a jury in August 2018. The jury concluded that Weil-McLain was negligent and that its negligence was a proximate cause of Swanson's injuries. Based on the jury's verdict, the trial court entered judgment for Swanson against MW for $5,489,688.68. The trial court denied post-judgment motions for judgment notwithstanding the verdict and new trial.

MW contends that the judgment must be reversed because the record contains insufficient evidence under Michigan law of a causal link between Swanson's exposure to asbestos supplied by Weil-McLain and Swanson's injury. MW alternatively contends that it is entitled to a new trial based on trial court error instructing the jury regarding causation under Michigan law. Finally, MW contends that the trial court improperly precluded evidence that would have impeached Swanson's testimony regarding his exposure to asbestos from Weil-McLain's products.

The evidence of causation presented at trial would have been sufficient under Michigan law to support the jury's verdict. But the trial court's instructions to the jury regarding causation reflected California law, not Michigan law. Because we conclude that the trial court improperly instructed the jury on Michigan law and that the error was prejudicial, we will reverse the judgment and remand to the trial court for retrial. Based on our conclusion that the judgment must be reversed, we do not reach MW's contention regarding the admissibility of precluded evidence.

## BACKGROUND

Robert Swanson was born in 1947 in Ishpeming, Michigan. Swanson enlisted in the United States Navy on his 17th birthday in November 1964. According to trial testimony, Swanson was

3

probably first exposed to asbestos during a two-year naval assignment beginning in November 1966 aboard the U.S.S. Theodore E. Chandler.

Swanson returned to Michigan after his discharge from the Navy and began working as a plumber at Thomas Plumbing & Heating (Thomas) in early 1969. Swanson's work included installing and servicing heating and plumbing systems in both new constructions and existing homes and other buildings. Swanson's work at Thomas included installing and maintaining boilers Weil-McLain manufactured. At his deposition, Swanson estimated that he installed more than 20 (and possibly as many as 100) Weil-McLain boilers (all but one in residences) during his time at Thomas.

Weil-McLain manufactures boilers that provide "comfort heat"—heat at a relatively consistent temperature—for buildings of different sizes. All but one of the Weil-McLain boilers Swanson installed were factory-assembled "packaged boilers." Swanson testified that during these installations he was exposed to asbestos supplied by Weil-McLain in the form of a powder he had to mix with water to make a paste to seal the area between a boiler's exhaust pipe and the chimney into which it was routed.

When he serviced a boiler, Swanson testified that he was exposed to asbestos when he removed asbestos-containing gaskets on the boilers. To remove the gaskets, Swanson sometimes used a putty knife and a hand wire brush, and the process generated dust that Swanson inhaled.

Swanson testified that he installed one Weil-McLain boiler that was not a packaged boiler—at Michigamme High School in the early 1970s. As part of that installation, Swanson testified that he handled asbestos rope and gaskets containing asbestos.

4

Although Swanson's work with Weil-McLain boilers ended when he left Thomas, Swanson's exposure to asbestos—even while he was at Thomas—was not limited to Weil-McLain boilers. Swanson performed maintenance work on other boiler brands, and testified that he was exposed to asbestos as part of that work. He also worked around drywallers, who removed and installed drywall and insulation. The joint compound that drywall workers sanded contained asbestos, and when asked what the "dustiest" part of his job at Thomas was, Swanson testified that it was "[w]hen the drywallers were cleaning up and sanding their drywall compound." Swanson was also exposed to asbestos in drywall joint compound that he applied and sanded in a home he built in 1974.

Swanson left Thomas in 1976. From 1976 to his retirement in 2005, Swanson worked as a pipefitter. From 1976 to 1979, Swanson worked at mining operations in Michigan. Swanson did not believe he had been exposed to asbestos on the job from 1976 to 1979.

Swanson moved to California in 1979 and continued working as a pipefitter, initially for a construction company and later for a heating and air conditioning company called Air Conditioning Company, Inc. (ACCO). ACCO installed heating and air conditioning systems in commercial buildings. Swanson testified that he was exposed to asbestos as part of his work at ACCO.

Swanson was diagnosed with mesothelioma in 2014. In February 2015, Swanson filed his original complaint against MW and several other defendants, alleging under California law that asbestos in the defendants' products, including Weil-McLain's boilers, had caused Swanson's mesothelioma.

In August 2015, MW moved the trial court for an order declaring that, because Swanson's exposure to asbestos from Weil-McLain products occurred entirely within the State of Michigan, Michigan law applied to Swanson's claims against MW. The trial court denied MW's motion. MW petitioned this court for a writ of mandate ordering the trial court to vacate its order and issue an order granting MW's motion. We granted MW's petition for writ of mandate and ordered the trial court to apply Michigan law to Swanson's claims against MW. (*MW I, supra*, B267711 at p. 8.)

Swanson died on March 2, 2016. Swanson's son, Shawn, identified himself as Swanson's successor-in-interest and amended the complaint to include his own allegations against Weil-McLain for his father's wrongful death.

The matter was tried to a jury in August 2018; MW was the only remaining defendant. After trial, the jury concluded that Weil-McLain was negligent and that Weil-McLain's negligence was a proximate cause of Swanson's mesothelioma. Based on the jury's verdict, the trial court entered judgment for Swanson against MW for $5,489,688.68.

MW filed, and the trial court denied, motions for a new trial and for judgment notwithstanding the verdict.

MW filed a timely notice of appeal.

## DISCUSSION

MW contends we should reverse the trial court's judgment on three bases. MW's primary contention is that Michigan law applies to Swanson's negligence claim against MW. MW argues that under Michigan law, which MW contends requires evidence of "but for" factual causation, the trial evidence regarding the causal link between his exposure to asbestos from Weil-McLain

6

products and his mesothelioma is insufficient to support the jury's verdict. MW also contends that the trial court committed instructional error by improperly instructing the jury regarding causation. Finally, MW contends the trial court committed prejudicial error by excluding admissible evidence that would have impeached Swanson's testimony regarding his exposure to asbestos from Weil-McLain products.

As we explain below, we agree that Michigan law applies. Based on what we understand Michigan law to require, the evidence adduced at trial *could* support the jury's verdict had the jury been properly instructed. Nevertheless, the record establishes that the jury was instructed on causation based on the California standard, not Michigan's. We will therefore remand the case to the trial court for a new trial. Because MW is entitled to reversal based on this contention, we do not reach MW's remaining contention.

## A. Application of Michigan Law

In August 2015, MW moved the trial court for an order to apply Michigan law to Swanson's claims; the trial court denied the motion. (*MW I*, *supra*, B267711 at p. 2.) MW petitioned this court for a writ of mandate ordering the trial court to vacate its order denying MW's motion and enter a new order granting the motion. (*Id.* at p. 8.) We granted MW's petition. (*Ibid.*)

In our opinion granting MW's petition, we explained that "Michigan law, and not California law, applies where plaintiff Robert Swanson's claims against [MW] arose in Michigan, where Swanson resided and where he was exposed to asbestos." (*MW I*, *supra*, B267711 at p. 2.) We "direct[ed] the superior court to reverse its order denying the motion of [MW] to apply Michigan

7

law to Swanson's claims and to grant the motion on Swanson's claims against [MW] only." (*Ibid.*, fn. omitted.)

MW contends that our opinion in *MW I* is the law of the case and established that Michigan law applies to Swanson's claims against MW. "The law of the case doctrine states that when, in deciding an appeal, an appellate court 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress . . . .' " (*Kowis v. Howard* (1992) 3 Cal.4th 888, 892-893.) The doctrine does not extend to summary denials of writ petitions. (*Id.* at p. 894.) But when "the matter is fully briefed, there is an opportunity for oral argument, and the cause is decided by a written opinion[,] [t]he resultant holding establishes law of the case upon a later appeal from the final judgment." (*Ibid.*)

Swanson responds that neither MW's trial court motion, MW's writ petition, nor our opinion granting MW's writ petition specifically mentions the application of Michigan law on causation in negligence causes of action to Swanson's claims. Because nobody specifically mentioned causation, Swanson argues, our prior opinion is not the law of the case regarding this particular element of a negligence cause of action, and therefore California law should apply. Choice of law, Swanson contends, is analyzed on an issue-by-issue basis. MW's failure to request in its motion to apply Michigan law to Swanson's claims that the trial court apply Michigan *causation* law to Swanson's negligence cause of action is fatal to MW's argument, according to Swanson.

Swanson is correct that California courts examine choice of law questions "with regard to the particular issue in question."

8

(See *McCann v. Foster Wheeler LLC* (2010) 48 Cal.4th 68, 88, quoting *Kearney v. Salomon Smith Barney* (2006) 39 Cal.4th 95, 107.) Swanson extends that contention, however, to an untenable end—that the law of different states may govern *different elements of a single cause of action* in cases pending in California state courts; that *each element* constitutes a *separate issue* for purposes of a choice of law determination. We are aware of no authority that would support that proposition, and we reject that argument.

There is nothing in our prior opinion that limits its application to the specific distinctions between California and Michigan law that drove our analysis and conclusion. MW's motion was premised on the fact that Swanson's exposure to Weil-McLain products occurred entirely in Michigan, that there are "material differences in California and Michigan *product liability and damages* laws," that Michigan's interest in applying its own law to Swanson's claims against Weil-McLain is superior to California's interest, and that Michigan's interests would be more impaired than California's if California substantive law applied to Swanson's claims against MW. MW used *examples* of differences between California and Michigan product liability and damages laws. Those examples demonstrated that there were differences between California and Michigan law that warranted a judicial determination regarding which state's law should apply to Swanson's claims. But MW's moving papers and request for writ relief and our opinion granting MW's writ petition all discussed the *issue* as whether Michigan law should govern Swanson's substantive *claims* against MW, *not* whether Michigan law governed *specific elements of individual causes of action* in Swanson's complaint.

9

We recognize that Swanson opposed MW's motion and writ petition by arguing about whether there were specific differences in various limited aspects of Michigan and California law. But Swanson's efforts to limit the relief requested or granted did not change the relief MW requested or that we granted.

The issue in MW's motion to apply Michigan law to Swanson's claims against MW and the subsequent writ petition was whether Michigan law applied to Swanson's claims against MW. It was *not* whether Michigan law governed *specific elements of various causes of action.* And our opinion in *MW I* preclusively established for purposes of the litigation in the trial court and this appeal that Michigan law governs Swanson's claims against MW.

## B. Causation Under Michigan Law

Swanson contends that causation in asbestos cases is the same in California and Michigan. MW contends it is different; that factual causation (as distinguished from legal causation) in California is governed by an "every exposure" theory, but Michigan requires evidence of "but for" causation in *all* negligence actions and that asbestos cases are no exception. We do not agree with either Swanson or MW.

" 'The elements of an action for negligence [in Michigan] are (i) duty, (ii) general standard of care, (iii) specific standard of care, (iv) *cause in fact*, (v) legal or proximate cause, and (vi) damage.' " (*Ray v. Swager* (2017) 501 Mich. 52, 63, fn. 13, italics added, quoting *Moning v. Alfono* (1977) 400 Mich. 425, 437.) "Proximate cause is an essential element of a negligence claim. It 'involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences.' Proximate cause is distinct from cause in fact,

10

also known as factual causation, which 'requires showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred.' " (*Ray*, at p. 63, fns. omitted.)

In California, "[i]n the context of a cause of action for asbestos-related latent injuries, the plaintiff must first establish some threshold *exposure* to the defendant's defective asbestos-containing products, *and* must further establish in reasonable medical probability that a particular exposure or series of exposures was a 'legal cause' of his injury, i.e., a *substantial factor* in bringing about the injury." (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 982, original italics, fns. omitted (*Rutherford*).) "[T]he plaintiff may meet the burden of proving that exposure to defendant's product was a substantial factor causing the illness by showing that in reasonable medical probability it was a substantial factor *contributing to the plaintiff's or decedent's risk of developing cancer.*" (*Ibid.*, italics added.)

Michigan asbestos-specific negligence cases have not made as distinct a division between proximate and factual causation as other Michigan negligence cases that have expressly considered the distinction between proximate and factual cause. Nevertheless, Michigan's asbestos cases instruct that "[t]here may be more than one proximate cause of an injury" such that multiple "causes frequently operate concurrently so that [they] constitute a direct proximate cause of the resulting harm." (*Allen v. Owens-Corning Fiberglas Corp.* (1997) 225 Mich.App. 397, 401.) "[A] defendant cannot escape liability for its negligent conduct simply because the negligence of others may also have contributed to the injury suffered by a plaintiff. *When a number of factors contribute to produce an injury, one actor's negligence*

11

*will be considered a proximate cause of the harm if it was a substantial factor in producing the injury.*" (*Id.* at pp. 401-402; accord *Brisboy v. Fibreboard Corp.* (1988) 429 Mich. 540, 547 (*Brisboy*).)

That does not lead us, however, to conclude—as Swanson would have us—that Michigan has adopted California's *Rutherford* causation standard. A substantial factor *contributing to an increased risk* of a plaintiff's injury is *not* the same thing as a substantial factor in *producing* the injury. (See *Davis v. Honeywell Internat. Inc.* (2016) 245 Cal.App.4th 477, 493.) Consistent with our understanding of Michigan law, we conclude that to establish causation under Michigan law in a negligence cause of action for asbestos-related latent injuries, a plaintiff must establish and a jury must conclude that the defendant's actions were a substantial factor in *producing* the plaintiff's injuries, and not merely in increasing the *risk* that the plaintiff would suffer the injury.

**1. Sufficiency of Swanson's Causation Evidence**

The record reflects that Swanson tried his case to the jury as though the California causation standard was the proper standard.

Swanson's experts told the jury that "asbestos is the only known environmental cause of mesothelioma. If a person has a diagnosis of mesothelioma and an established asbestos exposure, there's no reason to talk about any other cause." Dr. Arnold Brody, an experimental pathologist and cell biologist, explained that mesothelioma is a "dose response" disease, "meaning the more a person's exposed to [asbestos], the more likely they are to get [the] disease." Dr. Brody told the jury that "[t]hat doesn't mean you have to be exposed to huge amounts to get the disease.

12

It means the more you're exposed to it, the more likely you are. But some people have had really relatively low exposures and get mesothelioma. It all depends on susceptibility." But Dr. Brody recognized that there are threshold levels of exposure *below which* a person will *not* develop mesothelioma.

Perry Gottesfeld, an industrial hygienist, testified that he was not familiar with "a minimum safe dose of exposure to asbestos." Gottesfeld testified that exposures as high as Swanson's likely exposure from the materials he was exposed to working on Weil-McLain boilers "would increase one's risk of coming down with mesothelioma."

Dr. Barry Horn, a board-certified pulmonologist and critical-care specialist testified that Swanson's mesothelioma was caused by his exposure to asbestos. Swanson "was previously exposed to asbestos because of multiple jobs that he had," Dr. Horn testified. "His risk of developing mesothelioma was dose dependent. He had varying exposures. It was those exposures to asbestos that ultimately resulted in him developing mesothelioma." Dr. Horn's testimony made clear that mesothelioma "is a dose dependent disease." "The more exposure you have," he told the jury, "the greater your risk." Dr. Horn testified that Swanson's exposure to asbestos while he was onboard a Navy ship contributed to him getting mesothelioma, and that Swanson "had other exposures to asbestos in the course of his career working as a plumber. And they all contributed to his risk for the development of mesothelioma. The Navy exposure contributed to his risk, and his subsequent exposure to occur as a plumber also contributed to his risk." Dr. Horn told the jury that neither he, nor anyone else, could tell the jury the "tipping point," or "what caused [Swanson] finally to tip over to

getting . . . asbestos-caused mesothelioma." Dr. Horn's testimony continued in the same vein. He testified to the jury consistently that every one of Swanson's exposures to asbestos "contributed to his risk because it's a dose dependent disease. So, the more exposures he had, the more likely he would develop mesothelioma."

The record details Swanson's exposure to asbestos from the time he was a teenager in the Navy in the late 1960s until he retired from being a pipefitter in California in 2005. A significant part of that, according to trial testimony, was his exposure to asbestos from Weil-McLain boilers and related products from 1969 to 1976.

Nevertheless, in one question and answer, the record discloses evidence that would have been sufficient to support the jury's verdict had the jury been properly instructed on causation. Swanson's counsel asked Dr. Horn whether it was his opinion that Swanson's "work with Weil-McLain boilers was a substantial factor, proximate cause" of Swanson's mesothelioma. Dr. Horn replied "yes." An expert witness in California may give testimony that " 'embraces the ultimate issue to be decided by the trier of fact.' " (*Summers v. A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1178, quoting Evid. Code, § 805.)

### 2. Instructional Error

MW contends that the trial court erroneously instructed the jury regarding causation in two different ways. First, MW contends that the trial court erred by *not* giving a special instruction that MW requested, which would have instructed the jury that Swanson had to prove that "but for" Weil-McLain's actions, Swanson would not have been injured. Second, MW contends that the instruction the trial court *did* give was based

14

on California's causation standard, which, as explored above, is different from and more lax than Michigan's causation standard. Based on our conclusion regarding Michigan's causation standard that we explored above, we reject MW's first contention. But we agree with MW's second contention.

We review a trial court's instructions to the jury de novo. (*Alamo v. Practice Management Information Corp.* (2013) 219 Cal.App.4th 466, 475.) In determining if any error was prejudicial, we consider whether it is "reasonably probable" that the party asserting error "would have obtained a more favorable result in its absence." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 570 (*Soule*).)

### a. MW's Requested Special Instruction

MW requested that the trial court specially instruct the jury regarding causation. MW's requested special instruction included the following language: "Asbestos exposure from a defendant's product can be considered a substantial factor in causing a plaintiff injury if both (1) it is established that plaintiff's injury would not have happened but for his exposure to asbestos from defendant's product and (2) that the asbestos exposure from defendant's product had such an effect in producing the plaintiff's injury that a reasonable person would conclude that this exposure was responsible for causing plaintiff's injury."

"A party in a civil case is, upon request, entitled to correct jury instructions on every theory of the case that is supported by substantial evidence. [Citation.] 'It is elementary that a court may refuse a party's request for a jury instruction that misstates the law. "A trial court has no duty to modify or edit an instruction offered by either side in a civil case. If the instruction

15

is incomplete or erroneous the trial judge may, as he did here, properly refuse it." ' " (*Olive v. General Nutrition Centers, Inc.* (2018) 30 Cal.App.5th 804, 813.)

As we explored above, we do not agree with MW's contention that Michigan law requires a plaintiff to prove "but for" causation, rather that the defendant's actions were a substantial factor in producing the plaintiff's injury. Because the jury instruction would have erroneously instructed the jury, the trial court correctly refused the instruction.

### b. The Trial Court's Instruction

The trial court's instruction to the jury contained the following language: "[A] proximate cause in causing harm is a factor that . . . a reasonable person would consider to have contributed to the harm. It does not have to be the only cause of harm. Plaintiff may prove that exposure to asbestos from . . . Weil-McLain's asbestos-containing product was a proximate cause in causing decedent's illness by showing through expert testimony that there was a . . . reasonable medical probability that the exposure was a proximate cause contributing to . . . decedent's risk of developing cancer."

The trial court's instruction reflects the law on causation in California as articulated in the *Rutherford* case. In that case, our Supreme Court explained that *under California law*, a plaintiff "may meet the burden of proving that exposure to defendant's product was a substantial factor causing the illness by showing that in reasonable medical probability it was a substantial factor *contributing to the plaintiff's or decedent's risk of developing cancer.*" (*Rutherford*, *supra*, 16 Cal.4th at p. 982, italics added.) The language in the trial court's instruction, then, was lifted *directly* from the *Rutherford* case and expressly instructed the

16

jury to consider the question using the California standard, which we have explained is less stringent than the Michigan standard.

The trial court's instruction was incorrect.

Instructional error in a civil case, however, "generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached." (*Soule*, *supra*, 8 Cal.4th at p. 574.) "That assessment, in turn, requires evaluation of several factors, including the evidence, counsel's arguments, the effect of other instructions, and any indication by the jury itself that it was misled." (*Ibid.*)

As we have discussed, and as the respondent's briefing in this court acknowledges, Swanson tried this case on the theory that California's causation standard applied to the negligence cause of action the jury heard. At the very least, Swanson argued, California and Michigan law on the question were identical, and instructing the jury on California law was appropriate. We have rejected that argument, but it highlights that the overwhelming thrust of Swanson's case in the trial court was geared toward California's causation standard, and not any standard that would require a different or more stringent quantum or type of evidence. And during argument to the jury, Swanson argued relentlessly about Swanson's "*increased . . . risk* of developing mesothelioma" based on exposure to Weil-McLain products.

The jury in this matter was repeatedly told that any exposure to asbestos was sufficient to increase a person's risk of mesothelioma, and that to find MW responsible under a negligence theory, Swanson needed only demonstrate that

17

exposure to asbestos in Weil-McLain boilers had increased his risk of contracting the disease.  Had the jury been properly instructed, we believe it is reasonably probable that a jury could have concluded that Swanson had not met his burden of demonstrating the causal connection Michigan law requires— that the exposure was a substantial factor in producing the injury, rather than in merely increasing the risk of the injury.

## DISPOSITION

The judgment is reversed.  The matter is remanded to the trial court for a new trial.  Appellant is awarded costs on appeal.


CHANEY, J.

We concur:


ROTHSCHILD, P. J.


BENDIX, J.

Filed 6/24/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROBERT SWANSON et al., | B294181 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC571451) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| THE MARLEY-WYLAIN COMPANY, | |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

     The opinion in the above-entitled matter filed on June 4, 2021, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

     There is no change in judgment.

_____

ROTHSCHILD, P. J.       CHANEY, J.       BENDIX, J.