Filed 5/20/21  Martinez v. So. Cal. Edison CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CYNTHIA MARTINEZ, Plaintiff and Appellant, v. SOUTHERN CALIFORNIA EDISON COMPANY, Defendant and Respondent. | D078061 (Super. Ct. No. CIVDS1723979) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Bryan F. Foster, Judge.  Affirmed.

Marcus Jackson for Plaintiff and Appellant.

Tanya A. Guzman for Defendant and Respondent.

Cynthia Martinez sued her employer, Southern California Edison Company (SCE), claiming SCE failed to accommodate her panic disorder disability and engage in a good faith interactive process.  After a trial, the jury found she did not prove either claim, and the court entered judgment in SCE's favor.  The court later denied Martinez's motion for judgment notwithstanding the verdict (JNOV).

On appeal, Martinez contends the court erred by denying her JNOV motion and refusing several of her proposed special instructions. We affirm. Martinez did not meet her appellate burden to show prejudicial instructional error or that the court erred in denying her JNOV motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### Factual Summary[1]

In 2007, Martinez had a severe panic attack while driving on the freeway. She then avoided freeway driving whenever possible.

Two years later, in 2009, Martinez began working for SCE as a business analyst in SCE's Rancho Cucamonga office, which was six miles from where she was living.

Five years later, in June 2014, Martinez transferred to a different business analyst position with SCE's vegetation management division. This division is responsible for keeping trees and other vegetation away from power lines. She was assigned to work in SCE's San Bernardino office in its vegetation management resource center. At the time she lived in Fontana, which was about nine miles from the San Bernardino office. She commuted to work using surface streets.

For the next 12 years, Martinez continued to work in the same position in the San Bernardino office. Then during spring 2016, she and her husband discussed moving to Murrieta, which would result in a substantially longer commute of more than 45 miles each way.

Before the move, in April 2016, Martinez asked her supervisor whether she could relocate to a closer office if she moved to Murrieta. She did not say

---

[1] Under settled appellate rules, we summarize the evidence in the light most favorable to the jury verdict. (See *Collins v. County of San Diego* (2021) 60 Cal.App.5th 1035, 1048 (*Collins*).)

anything about a disability.  Her supervisors did not approve the relocation because they found her job duties required she physically remain with her work team and the paper files.  But they expressed willingness to adjust her start and stop times to help with the commute.

Four months later, in August 2016, Martinez and her husband purchased a new home in Murrieta.  She testified their motivation for making the move was "two-fold":  (1) her husband's job location might move to the Murrieta area (it eventually did not move); and (2) she had not had a panic attack "in years" and she felt the move would provide her with a "good opportunity" to use "exposure therapy" and see whether she had overcome the problem.  She said the move would provide "an opportunity for me to learn from what was bothering me" and "face [my] fears" about freeway driving.  Martinez acknowledged she did not visit the new house until the escrow period, nor did she ever "practice[ ]" the drive from Murrieta to the San Bernardino office, or consult with a doctor about her panic disorder before making the move.

She testified that when she first visited the house during escrow, she experienced panic symptoms while she was on the freeway.  She thus exited the freeway and used side streets.

After escrow closed, on her first day back to work, on August 22, she asked her supervisor to be relocated (with the same job) to an SCE office closer to her new home (either SCE's Wildomar or Menifee office).  This time she based her request on the fact that she suffered panic attacks when driving on the freeway during her new commute.  She gave her supervisor an August 11, 2016 letter from her doctor, stating he has been treating Martinez for the past two months for "anxiety disorder" and he recommends she "avoid situations that may aggravate her anxiety symptoms or panic attacks."  He

3

said that Martinez "reports that driving a vehicle for long distances, especially on the freeways, causes her to have increased anxiety and possibly result in panic attacks," and therefore he "recommend[s] that her job be located close to her home . . . ."

Martinez's supervisor responded that she must follow SCE policy by requesting work accommodations through Sedgwick, a third party disability claims administrator. Martinez replied, "I was hoping that I would not have to go through a formal process and that my group would just relocate me. But I am gathering that this is not the direction that we are going. I will contact Sedgwick today."

Martinez then submitted a disability claim to Sedgwick, asking to be relocated to an office closer to her new home based on her panic disorder condition. She testified she found her commute to the San Bernardino office to be "hellish" and it made her anxious all the time because of the stress of thinking about the commute and the possibility of a panic attack.

Under governing policies, Sedgwick then communicated Martinez's request to her supervisors and individuals within SCE's human resources and disability management divisions.

These individuals gave serious consideration to Martinez's request. Carol Wood, manager of the disability management unit, urged Martinez's supervisors to consider trying to accommodate her request, but expressed understanding that an accommodation may not be possible given the nature and type of work performed by Martinez and the vegetation management team.

After a full consideration of Martinez's request, her supervisors denied the request because they found Martinez could not complete or perform her core work if she was to relocate to another location. This determination was

4

based on two considerations. First, the supervisors determined that at least 75 percent of her tasks required Martinez to work at the San Bernardino facility with physical files that occupy close to 200 filing cabinet drawers. Second, the supervisors found Martinez's duties required she have "continuous collaboration with and instruction from" two other analysts who worked with Martinez in the San Bernardino facility. The supervisors concluded that Martinez's "physical presence" at the San Bernardino facility was "fundamental" to her job.

Martinez then contacted Deborah Goodwin, who worked in SCE's disability management unit, and Martinez expressed disagreement with her supervisors' decision. In an email, Goodwin responded that the reason for the denial was that SCE "does not offer job accommodations for getting to work." But Goodwin (who was supervised by manager Wood) testified she had not spoken with Martinez's supervisors before sending this email and testified that SCE had no policy with regard to whether it would accommodate a commute.

In her email, Goodwin proposed various alternatives for assisting Martinez's commute, including carpooling or vanpooling or changing work schedules to help with commute times. Goodwin also informed Martinez that if she "had a condition that flares up, you may also open an intermittent FMLA [Family Medical Leave Act] claim to provide . . . time off of work," noting that FMLA "can provide up to 480 hours of protected time off [and] can provide protection for you in the event you have a flare [up] and need to miss a day of work or just a couple of hours." She also noted that if these options were not viable and Martinez needed to take additional time off work, she "may need to open a disability claim through Sedgwick."

Martinez responded that Goodwin's suggestions were not "acceptable alternatives" for her. Martinez testified she never explored the possibility of a vanpool or carpool because she did not believe those alternatives would work. She claimed her panic symptoms occurred whether she was the driver or passenger.

Martinez then continued to request that SCE reconsider its decision. She repeatedly complained to her supervisors about the difficulty of having to commute 45 miles with her anxiety/panic attack disorder. She wrote a lengthy letter to one supervisor, explaining the nature of her anxiety disorder and stating she made the decision to move "hoping that somehow, I would be able to manage adjusting my drive from an 8 mile side street commute, to a 45 mile, mostly freeway drive. Unfortunately, I have not experienced the results I sought. Each morning and afternoon, I face the knowledge that should a panic attack occur, I may not be able to safely control my vehicle . . . ." She told her supervisors she disagreed with their conclusions that the team must remain together for work reasons, asserting she was generally assigned different work (weed abatement) from the other team members (who worked on line-clearing). As to the physical files, she said "our internal pony delivery system could easily transport [the physical files] to any desired location."

Meanwhile, Martinez continued to commute to work and admitted that once she arrived at work she was generally able to fully perform her duties. But on a few occasions when she arrived at work she was too upset and anxious to work.

In October 2016, SCE announced the San Bernardino office would be closing due to earthquake safety concerns. That decision triggered Martinez to reassert her request to relocate to SCE's Menifee or Wildomar offices that

6

were closer to her home. Matthew Deatherage, who supervised Martinez's supervisors, denied the request, stating: "[Y]our request to work in a different location has been reviewed thoroughly and business needs dictate that it cannot be accommodated at this time. . . ." Martinez responded by strongly disagreeing with the business justifications, reasserting that she personally did not believe she needed to be in the same office as the two coworkers.

In November 2016, an SCE job was posted for a contracts manager at the Wildomar facility. Martinez applied for the job and believed she was "very qualified" for the position. Martinez admitted, however, the job would have been a promotion. SCE did not give her an interview for this position.

On Tuesday, November 22 (Thanksgiving week), Martinez asked her supervisor if she could work out of the Wildomar office the next day to avoid "what is more than likely to be a very busy and horrible ride home." Her supervisor denied this request.

In the next few months, Martinez would often come to work, but had many absences.

In about February 2017, Martinez applied for another SCE open position (civil construction analyst) located in the Wildomar office. Eighty-six individuals applied for this position, and Martinez was one of six applicants selected to interview for the position. After the interview, she was ranked fourth out of the six applicants, and another candidate was ultimately selected. She was later told she was generally qualified for the position, but did not have the technical skills needed for the job (including advanced Excel and MS Access skills). The written job description confirms that these skills were required for the job.

In about March 2017, SCE closed the San Bernardino office (because of the earthquake safety issues) and transferred the vegetation management

7

resource center team to SCE's Redlands office. All of the physical records were also relocated to this facility. This office was also about 45 miles from Martinez's Murrieta home.

On the first day she was required to report to the Redlands office, March 27, 2017, Martinez arrived at work in a highly emotional state, "sobbing uncontrollably" throughout the day, and stating she would be unable to do this daily commute. SCE made efforts to assist her and help her find someone who was willing to drive her home.

Two days later, Martinez returned to work at Redlands, and said her doctor gave her additional medications. Martinez told her supervisor she did not want to take time off work and wanted to see if she could make it work with the new commute. She said she found a better route that might work. But she again asked to relocate to the Menifee office, and her supervisor denied this request.

At about this time, Martinez texted with a coworker in which Martinez claimed she was "ok" with the drive, and that she "was sure that she would adjust like everyone else."

Shortly after, Martinez's attorney filed a discrimination claim with the California Department of Fair Employment and Housing. Martinez claimed she was discriminated against based on her panic disorder disability.

A few days later, Martinez again asked her supervisors if she could relocate to an SCE office closer to her home. She said she had a difficult night and the anxiety of the morning's commute had resulted in abdominal pains. She reiterated that the drive is "very exhausting and debilitating, due to the medically confirmed anxiety disorder from which I suffer." She said that taking FMLA time off results in her getting less pay and having to use vacation pay and floating holidays. She said she planned to take her laptop

8

home with her, and again stated her willingness to work in either the Wildomar or Menifee facilities.

Martinez's supervisor told her not to take her laptop computer home. He explained her work duties and her position as a nonexempt employee require her to come into the office to complete her work, "and there is only one location where we do this work, and right now it is in the Vegetation Management Resource Center in Redlands." He said, "It is our expectation that you leave [the computer] in your work area in a safe and secure location . . . . [¶] If you are unable to come into work, we advise and encourage you to use your FMLA as needed. As we've discussed for many months, we do not want you to get behind the wheel when it is unsafe. . . ." SCE's policy was that nonexempt employees were not permitted to bring laptops home because employees were under "strict oversight to help ensure they report all overtime, get approval for overtime, weren't expected to answer calls after hours, aren't expected to write and read work-related emails when they are not being paid for that."

Two months later, in June 2017, Martinez's doctor advised her that she should take a leave of absence because of her continued anxiety and mental and physical health problems related to the anxiety. Based on this advice, she took a leave of absence beginning in June 2017.

During the next several months while Martinez remained on disability leave, SCE's disability management unit continued to explore the issues raised by Martinez's disability accommodation request and her disability claims for being off work. In so doing, the unit asked Sedgwick to obtain an independent psychiatric evaluation of Martinez. Sedgewick then retained Dr. David Block, who met with Martinez and reviewed documents relating to her disability claim.

Based on this review, Dr. Block issued a report on August 21, 2017, in which he concluded Martinez suffers from a "Panic Disorder," which is "almost entirely related to fears of driving on highways." He opined that based on this diagnosis, during the next four to six weeks, "it is not advisable that [she] have to travel by car on a freeway to anywhere that she works. This claimant is a good candidate for telecommunicating to work, if possible, while she gets her anxiety related to freeway driving under better control." He said that Martinez "is able to perform the substantial and material duties of her usual occupation," but advised "that she be allowed to work from home or at a site near her home that she can easily get to without getting on highways." He said Martinez's need to work close to home was temporary and should be reevaluated after she had the opportunity to work with mental health professionals.

After reviewing this report, SCE's disability management unit made efforts to determine whether some of Martinez's work could be temporarily performed remotely from the Wildomar office. Disability management employee Kathy Campbell performed her own analysis of Martinez's work primarily by reviewing files and speaking with Martinez's coworkers, and concluded that at least on a temporary basis, "the majority of [Martinez's] work is or can be performed via online tools . . . ." Based on this review and Dr. Block's evaluation, Campbell recommended that SCE permit Martinez to work at a site close to her home for 90 days and, during that period, evaluate whether this work accommodation can satisfy her supervisors' needs. Although Martinez's supervisors did not believe that all or most of her work could be effectively performed in a different office, they agreed some of the work could be performed at a remote location.

While this reevaluation was being performed, Martinez filed a lawsuit against SCE in the superior court, alleging disability discrimination, retaliation, and other related claims.

Two months later, SCE permitted Martinez to work temporarily in the Wildomar office close to her home. She began working in that facility on February 9, 2018. Because she did not have access to the physical files, Martinez could not, and did not, perform many of her prior duties. Additionally, some of Martinez's job duties had changed in the time since she had first requested the accommodation. Martinez admitted at trial that her job responsibilities "changed immensely" after she began working in the Wildomar office.

In April 2018, SCE made the decision that Martinez could permanently work from the Wildomar office.

**Trial**

Martinez's complaint alleged five causes of action under the Fair Employment and Housing Act (FEHA): (1) disability discrimination; (2) failure to accommodate a disability; (3) failure to engage in a good faith interactive process; (4) failure to prevent discrimination; and (5) retaliation. In February 2019, these claims were tried before a jury. At the time, Martinez remained a SCE employee.

Martinez's counsel presented her case primarily through Martinez's own testimony and the testimony and emails of various SCE personnel (who were called as adverse witnesses). In her testimony, Martinez described her move and the reasons for her move; her initial panic attacks and then her ensuing anxiety while driving on the freeways; the difficulty of her commute to San Bernardino and then Redlands; and her disagreements with her supervisors' conclusions that her work required her to be physically present

11

at the San Bernardino or Redlands facilities. She claimed she lost 40 percent of her salary during the time she was on disability leave (from June 2017 through February 2018).

In defense, SCE's presented evidence (summarized above) that the core aspects of Martinez's job required her physical presence at San Bernardino and then Redlands, and that its later decision to allow her to relocate was based on a determination that some (but not all) of her tasks could be performed in a different office and that her work changed when she worked from the Wildomar office.

Martinez did not designate counsels' opening statements or closing arguments as part of the appellate record, and therefore we do not know the nature of the theories argued by Martinez's counsel or SCE's counsel.

Before the case was submitted for the jury's determination, the court granted nonsuit on the retaliation and disability discrimination claims, and found the failure to prevent discrimination was the same claim as the failure to accommodate discrimination.

Thus, the jury was instructed on two theories of liability: (1) failure to reasonably accommodate Martinez's disability; and (2) failure to engage in an interactive process. The court used the standard CACI instructions to define and describe the elements of each of these claims. (See CACI Nos. 2541, 2542, 2543, 2599, 2546.) These instructions included an explanation of the essential elements of a reasonable-accommodation claim; the meaning of a "reasonable accommodation"; examples of reasonable accommodations; factors in deciding whether the employee was able to perform the essential job duties; and the elements of a failure-to-engage-in-interactive-process claim.

The court refused to instruct on several special pinpoint instructions proposed by both Martinez and by SCE. The court found these instructions were covered by the CACI instructions, and/or appeared to be "getting into too many specifics" and "telling the jury" what it should decide. The court said each counsel was free to argue to the jury the points in their proposed special instructions, but that the CACI instructions provide a "good statement as to what the law is."

After deliberating for less than two days, the jury returned a unanimous special verdict in SCE's favor on both causes of action.

As to the failure-to-accommodate claim, the jury answered "Yes" to the following questions: (1) "Did . . . Martinez have a mental disability that limited her ability to travel, breathe *and/or* work" (italics added); (2) Did [SCE] know that . . . Martinez had a mental disability that limited her ability to travel, breathe *and/or* work?" (italics added); and (3) "Was . . . Martinez able to perform the essential duties of her job with reasonable accommodation for her mental disability?" But the jury answered "No" to the question "Did [SCE] fail to provide reasonable accommodations for . . . Martinez's disability?"

As to the failure to engage in interactive-process claim, the jury answered "Yes" to the following question: "Did . . . Martinez request that [SCE] make reasonable accommodation for her mental disability so that she would be able to perform the essential job requirements?" But the jury answered "No" to the question, "Was . . . Martinez willing to participate in an interactive process to determine whether reasonable accommodation could be made so that she would be able to perform the essential job requirements?"

13

Based on the "No" responses on each claim, the court found Martinez was not entitled to recover on either cause of action and entered judgment in SCE's favor.

Martinez then moved for a JNOV, arguing the undisputed evidence established she proved her claims as a matter of law and that the jury "ignor[ed] the clear undisputed facts in the case." The court denied the motion.

On appeal, Martinez challenges the court's denial of her JNOV motion and its refusal to give four of her proposed special instructions. We first consider the JNOV motion and then address Martinez's challenges to the court's rulings on the jury instructions.

## DISCUSSION

## I.  JNOV Motion

## A.  Review Standards

An appeal from the denial of a JNOV motion "is essentially the same as appealing the judgment itself for a lack of substantial evidence." (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 639.) A trial court may grant the motion only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support. (*Collins, supra*, 60 Cal.App.5th at p. 1048.) The court must deny the motion if there is any substantial evidence, contradicted or uncontradicted, supporting the jury's verdict. (*Ibid.*)

On appeal, we consider the issue de novo under the same standards. (*Collins, supra*, 60 Cal.App.4th at p. 1048.) Like the trial court, we may not reweigh the evidence or judge witness credibility. (*Ibid.*; *Johnson & Johnson Talcum Powder Cases* (2019) 37 Cal.App.5th 292, 313-314.) We resolve all conflicts in the evidence and draw all reasonable inferences in favor of the

14

verdict. (*Collins*, at p. 1048.) If the evidence is conflicting or if several reasonable inferences may be drawn supporting the jury's verdict, we must affirm the order denying the motion. (*Ibid.*)

Under these principles, we evaluate Martinez's challenges to the jury's findings on her (1) failure-to-accommodate claim; and (2) failure-to-engage-in-interactive-process claim.

## B. Failure-to-Accommodate Claim

### 1. Applicable Law

To establish a failure-to-accommodate claim, a plaintiff must prove (1) she has a disability covered by the FEHA; (2) she can perform the essential functions of the position to which accommodation is sought; and (3) the employer failed to reasonably accommodate her disability. (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 256-257.) The reasonableness of an employer's action is a question of fact that must be decided on a case-by-case basis. (See *Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 374 (*Nealy*); *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 954.)

Under the FEHA, " 'reasonable accommodation' " means " ' "a modification or adjustment to the workplace that enables the employee to perform the *essential functions* of the job held or desired." ' " (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 719 (*Atkins*), italics added.) "FEHA does not require employers to eliminate essential functions of a job to accommodate a disabled employee." (*Ibid.*) "The employee's burden includes 'showing he or she can perform the essential functions of the job with accommodation, not that an essential function can be eliminated altogether to suit his or her restrictions.' " (*Id.* at p. 720.)

15

## 2. Analysis

The jury found Martinez did not prove SCE failed to reasonably accommodate her disability, and thus Martinez could not recover on her FEHA failure-to-accommodate claim. Martinez argues this finding is unsupported because it is undisputed SCE did not grant her relocation request from August 2016 until February 2018. In asserting this argument, Martinez improperly disregards SCE's evidence and misconstrues an employer's obligation when a requested job accommodation precludes the employee from performing the essential duties of the position.

SCE presented evidence that Martinez's relocation would have precluded her from performing her essential job duties. Martinez's direct supervisor testified Martinez's work required that she remain in the same location as others who worked for the vegetation management team, and therefore her physical presence was needed for her to perform the essential functions of her job.[2]

The supervisor based this decision on facts showing (1) Martinez's work requires she have access to voluminous physical files (that were not available in electronic form) at the vegetation management resource center at SCE's San Bernardino office (and later at the Redlands office); and (2) the importance of working alongside two other team members who also needed access to the same files and with whom Martinez was expected to work, including to cover their overflow work. We infer from the verdict that the jury found this evidence credible, and rejected Martinez's contrary evidence.

---

[2]    Martinez complains that the supervisor did not use the phrase "essential function" in describing her work at the San Bernardino facility. However, the substance of his testimony supported this fact.

In challenging the jury's finding, Martinez discusses her own testimony that she did not believe she needed to be physically present at the San Bernardino office. However, as an appellate court, we cannot reweigh the evidence or reevaluate the credibility of the witnesses. (*Collins*, *supra*, 60 Cal.App.5th at p. 1048.) Similarly, Martinez's reliance on SCE employee Campbell's conclusions that a majority of Martinez's work could be performed remotely does not defeat the jury's factual findings. There is evidence in the record showing Campbell conducted only a superficial review of Martinez's duties, was focused mainly on a temporary relocation, and was acting as an advocate for Martinez. On this record, the jury had a sound basis to credit the testimony of Martinez's supervisors, rather than Campbell's conclusions on this issue.

Martinez alternatively argues the jury was *legally required* to find the requested accommodation was reasonable because SCE eventually granted the request. However, SCE presented evidence that it later agreed to permit Martinez to work from the Wildomar facility *despite* that she would not be able to perform the essential functions of her prior job. The evidence showed that Martinez's supervisors structured a somewhat different position for Martinez where she would not have access to the physical files needed in her prior job. SCE's election to alter the requirements of Martinez's job does not mean its earlier refusal to do so violated the FEHA. Although the jury could have agreed with Martinez that SCE's subsequent decision to permit the relocation shows that its earlier conclusions were pretextual, it was not required to do so.

Moreover, the evidence showed that early in the process SCE did offer other accommodations that would permit Martinez to continue to perform the essential functions of her job, including by altering her commute hours,

17

allowing her time off when she was feeling anxious about the commute, and providing her with carpooling and vanpool options. Although Martinez testified she did not believe these were viable options, the jury was entitled to find these options could have effectively addressed Martinez's disability issues if she made the effort to try them.

Although not a dispositive factor, the jury was also entitled to consider the fact that Martinez's supervisors *first* made clear to her that they would not approve her relocation request because her work required her to be physically present with the physical files and with the other team members. Martinez *then* made the voluntary decision to move 45 miles away. It was not until after escrow closed on her new house that Martinez raised the disability accommodation request. Thus, it was Martinez's voluntary actions that created, or at least contributed to, the need for an accommodation. As discussed in section II.E. below, this factor is a relevant consideration in evaluating the reasonableness of an employer's accommodation actions.

Further, an employer need not accommodate a disability that is not relevant to an employee's ability to perform the job. Put otherwise, if the employee is capable of performing the job despite the disability, the employee is not entitled to an accommodation. (See *Brumfield v. City of Chicago* (7th Cir. 2013) 735 F.3d 619, 632-633.) SCE presented evidence that Martinez was able to perform the job once she was at the jobsite. This evidence included Martinez's testimony and her statements to the defense's expert that she was able to perform her job duties (although she sometimes left work early because of her anxiety in thinking about the commute home). Although Martinez also presented contrary evidence—that she was extremely anxious and upset on a few occasions when she arrived at work after a difficult drive

18

and thus could not perform her job—the jury had a reasonable basis to decline to credit this evidence.

In her reply brief, Martinez claims she offered "a mountain of testimony and emails regarding numerous occasions where her panic attacks were so bad" that she missed work or was too upset to work. In support, she cites only two portions of her testimony referring to two specific days in which she was upset at work or did not wish to come into the office. It was for the jury to evaluate Martinez's testimony and decide whether she needed accommodations to perform the essential portions of her job.

Martinez alternatively argues the jury was compelled as a matter of law to find in her favor on the reasonable accommodations question based on her request that she be permitted to work from home "on an as-needed basis." However, the jury had a reasonable basis to find SCE was not required to approve this request because—as discussed above—the evidence showed Martinez could not perform her essential job duties away from the San Bernardino office (and later Redlands office). Additionally, the record does not support that Martinez made this general request, or that Martinez's counsel argued this theory to the jury. This evidence shows at most Martinez asked to work away from the office a few times, but it does not show that Martinez ever made a general request to work away from the office on an "as-needed" basis because of her disability.

Martinez next argues the evidence did not support the verdict on the failure-to-accommodate claim because she was not given "preferential" consideration for the two other positions for which she applied.

Under California law, a disabled employee "is entitled to preferential consideration of reassignment to a vacant position over other applicants and existing employees." (Cal. Code Regs., tit. 2, § 11068, subd. (d)(5); see *Raine*

19

*v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1223.)  However, this reassignment obligation does not require the employer to promote the employee to a new job with new duties and higher pay.  (*Atkins*, *supra*, 8 Cal.App.5th at p. 721; *Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1389; *Furtado v. State Personnel Bd.* (2013) 212 Cal.App.4th 729, 745.)  Moreover, " '[a] reassignment . . . is not required if 'there is no vacant position for which the employee is qualified.' " (*Raine*, at p. 1223.)

Under these principles, the jury had a valid basis to find that SCE had no obligation to give Martinez preferential treatment for the two open positions at the Wildomar office.  It was undisputed the first job would have been a promotion, and the evidence supported Martinez did not have the technical skills to perform the second job.

### C.  Failure-to-Engage-in-Interactive-Process Claim

Martinez next challenges the sufficiency of the evidence to support the jury's finding that she was unwilling to participate in the interactive process.

In response to a request for a disability accommodation, an employer has a duty to "engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations."  (Gov. Code § 12940, subd. (n).)  "[T]he interactive process is designed to bring the two parties together to speak freely and to determine whether a reasonable, mutually satisfactory accommodation is possible to meet their respective needs."  (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 62.)  During this time "[b]oth employer and employee have the obligation 'to keep communications open' and neither has 'a right to obstruct the process.' " (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1014.)

In this case, the jury found Martinez did not meet her burden to prove *she* was willing to participate in an interactive process to identify a

reasonable accommodation to permit her to perform the essential job requirements. Substantial evidence supported this finding.

SCE presented evidence it engaged in efforts to discuss options with Martinez to accommodate her disability that made her commute more difficult. Those alternatives included carpooling, vanpooling, and shifting Martinez's work hours to make the commute easier. SCE also presented evidence that Martinez was unwilling to consider any of these options and instead her sole objective was to work closer to her new home. Based on this evidence, the jury had a sound basis to find Martinez did not meet her burden to show she was willing to participate in a reasonable interactive process.

Martinez argues the undisputed evidence showed she repeatedly and strenuously raised the issue of her disability with her SCE supervisors, and therefore posits that she was "[c]learly . . . *willing to have a dialog about accommodating her driving disability . . . .*" However, the fact that she repeatedly raised the issue does not mean she was willing to engage in an interactive process. The jury had a reasonable basis to conclude that Martinez repeatedly raised the issue solely in an effort to convince SCE to agree to *her* proposal—working at a facility closer to her home. A one-sided demand—even if it is made numerous times—does not necessarily reflect a willingness to reach a reasonable and mutually satisfactory accommodation.

Martinez argues that SCE failed to satisfy its interactive-process obligations because disability manager Campbell did not speak with her before performing an analysis of her work. However, Campbell's role at that time was to revaluate Martinez's requested accommodation (a reevaluation that ultimately favored Martinez), and not necessarily to engage in an interactive discussion. Moreover, under the special verdict instructions, the jury never reached the issue of whether SCE properly engaged in the

interactive process. The jury was first asked whether Martinez proved *she* "was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that she would be able to perform the essential job requirements?" Based on the "No" answer, the jury was told to go no further in the special verdict form.

## II. Claimed Instructional Errors

### A. Review Standards

Upon request, a party is entitled to correct, nonargumentative instructions on every theory of her case that is supported by substantial evidence. (*Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1021 (*Crouch*); *Rosenfeld v. Abraham Joshua Heschel Day School, Inc.* (2014) 226 Cal.App.4th 886, 898.)

However, a "party is not entitled to have the jury instructed in any particular phraseology and may not complain on the ground that [the] requested instructions are refused if the court correctly gives the substance of the law applicable to the case." (*Hyatt v. Sierra Boat Co.* (1978) 79 Cal.App.3d 325, 335.) The trial court's duty "is fully discharged if the instructions given by the court embrace all the points of the law arising in the case." (*Ibid.*; see *Alamo v. Practice Management Information Corp.* (2013) 219 Cal.App.4th 466, 475 (*Alamo*).)

"Instructions should state rules of law in general terms and should not be calculated to amount to an argument to the jury in the guise of a statement of law. [Citations.] [I]t is error to give, and proper to refuse, instructions that unduly overemphasize issues, theories or defenses either by repetition or singling them out or making them unduly prominent although the instruction may be a legal proposition." (*Fibreboard Paper Prods. Corp.*

*v. East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 718; see *Alamo, supra,* 219 Cal.App.4th at p. 475.)

We review de novo an instructional error challenge. (*Crouch, supra,* 39 Cal.App.5th at p. 1021.) When a party contends a court erred in refusing an instruction, we view the evidence in the light most favorable to the requesting party. (*Ibid.*)

An instructional error is not reversible unless the appellant establishes the error was prejudicial. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580.) "Instructional error in a civil case is prejudicial 'where it seems probable' that the error 'prejudicially affected the verdict.' " (*Ibid.*) Actual prejudice must be shown and is assessed in the context of the trial record, including "(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Id.* at pp. 580-581.) This prejudice determination " 'depends heavily on the particular nature of the error, and its effect on the appellant's ability to place his or her full case before the jury.' " (*Norman v. Life Care Centers of America, Inc.* (2003) 107 Cal.App.4th 1233, 1248-1249, italics omitted.)

Under these standards, we consider Martinez's contention that the court erred in refusing to instruct on four of her proposed special instructions.

**B. Special Instruction No. 4: Adjustments to Accommodation Policies**

Proposed Special Instruction No. 4 read: "The essence of the concept of reasonable accommodation is that, in certain instances, employers must make special adjustments to their policies for individuals with disabilities."

This instruction was unnecessary because the subject matter was covered by the given CACI instructions. Using CACI No. 2542, the court told the jury, "A reasonable accommodation is a reasonable change to the

23

workplace that allows an employee with a disability to perform the essential duties of the job," and identified numerous examples of reasonable accommodations. Under this instruction, the jury would have understood that an employer has the obligation to make adjustments to their policies if needed to provide a reasonable accommodation.

Martinez argues her proposed instruction was necessary because a "major defense argument, which the jury appears to have accepted based on two questions the jury submitted during witness examinations, is that there was no legal requirement to accommodate a commute to work." This argument contains several unsupported assumptions.

First, there is no support in the record that SCE argued that there was no legal requirement to accommodate a commute to work. Because Martinez did not include the closing arguments in the appellate record, we have no basis to know what defense counsel argued.

Second, several SCE witnesses acknowledged at trial that SCE did not have a policy prohibiting disability accommodations relating to commutes. Although two SCE employees told Martinez that SCE did not accommodate commutes, these witnesses (and SCE's disability manager Wood) acknowledged that SCE did not have a policy to this effect. Consistent with this testimony, the evidence showed that in September 2016 Wood instructed Martinez's supervisors to accommodate Martinez's relocation request if it would not interfere with her performing the essential tasks of her job.

Third, there is no support for Martinez's assertion that the jury accepted the argument that there is no legal requirement to accommodate a commute. Martinez relies on two juror questions pursuant to the court's policy allowing jurors to submit written questions to the attorneys during the evidentiary phase of the trial. Martinez does not cite to the record to show

24

which questions these were. In any event, a juror's questions during a witness's testimony *before the jury is instructed*, does not establish the juror had accepted any arguments or evidence before the deliberations began.

### C. Special Instruction No. 5: Commute Accommodations

Proposed Special Instruction No 5 read: "Employers *must* provide accommodations even for an employee's disability which does not limit their ability to perform their job duties but impacts their ability to get to work or their job attendance." (Italics added.)

As worded, this instruction is not a correct statement of the law. The issue whether and when and to what extent an employer must provide accommodations for a disabled employee is a reasonableness standard, and the court would have erred in instructing the jury that SCE "must" provide accommodations under the identified circumstances.

The decisions relied upon by Martinez do not support an instruction that an employer *must* accommodate a disabled employee's claimed commute difficulties. (See, e.g., *Livingston v. Fred Meyer Stores, Inc.* (9th Cir. 2010) 388 Fed.Appx. 738 (*Livingston*); *Sargent v. Litton Systems, Inc.* (N.D.Cal. 1994) 841 F.Supp. 956 (*Sargent*); *Humphrey v. Memorial Hospitals Assn.* (9th Cir. 2001) 239 F.3d 1128 (*Humphrey*).)

In *Livingston*, a visually impaired individual asked her employer for a modified work schedule because she could not walk or drive safely after dark. (*Livingston, supra*, 388 Fed.Appx. at p. 739.) After the employer refused, the employee sued under the American Disabilities Act (ADA), and the district court granted summary judgment in the employer's favor based on its conclusions that (1) the employee was not disabled because her vision impairment did not substantially limit any major life activity; and (2) the

25

duty to accommodate does not as a matter of law extend to " 'commute-related limitations.' "[3]  (*Id.* at pp. 739, 740.)

The Ninth Circuit reversed.  (*Livingston, supra*, 388 Fed.Appx. at pp. 739-741.)  On the first issue, the court stated "[i]t is beyond dispute that 'seeing' is a major life activity."  (*Id.* at p. 740.)  On the second issue, the court recognized an employer may have a duty under the ADA to accommodate a disabled employee's limitations in getting to and from work, and found the employee presented sufficient evidence to preclude summary judgment because she presented evidence supporting that her specific requested accommodation—"a modified schedule that permit[ted] her to work an earlier shift"—was reasonable given that the employer "did not experience any hardship when [the employee] worked a modified schedule the previous year."  (*Id.* at p. 741.)

In *Sargent*, an employer urged the court "to adopt a bright line rule [under the FEHA] that employers have no duty to get their employees to work and therefore [it] had no duty" to accommodate an employee who suffered substantial back and neck problems making it difficult for her to commute.  (*Sargent, supra*, 841 F.Supp. at pp. 961, 958.)  The court declined to adopt such a "rigid" rule, emphasizing an employer's " 'reasonable accommodation' " obligation is to be interpreted "flexibly" and stating employers must "actively re-structure their way of doing business in order to accommodate the needs of their disabled employees."  (*Id.* at p. 961; accord *Humphrey, supra*, 239 F.3d at p. 1137 [reversing summary judgment because triable factual issues existed whether the plaintiff with obsessive compulsive disorder could perform essential duties of job at home].)

---

[3]  California courts recognize ADA decisions are relevant in interpreting the FEHA.  (See *Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 235.)

26

Neither *Livingston* nor *Sargent* nor *Humphrey* support giving an instruction that SCE was *required* to provide accommodations for difficulties relating to Martinez commute. Rather, these authorities stand for the proposition that there is no bright line rule and an employer's obligations to accommodate a disabled employee's difficulties in getting to work depend on the particular circumstances of the case. Consistent with this principle, the court here instructed the jury that a reasonable accommodation is a "reasonable change to the workplace that allows an employee with a disability to perform the essential duties of the job," and that reasonable accommodations may include a wide range of alterations, including "changing job responsibilities or work schedules." Under these given instructions, both counsel were free to argue about the reasonableness of SCE's actions pertaining to Martinez's claimed commute difficulties.

Martinez argues the jury should have been "instructed that driving anxiety and panic attacks affecting [an employee's] work commute *had* to be accommodated under the law." (Italics added.) The proposed instruction was argumentative and is not an accurate statement of the law.

### D. Special Instruction No. 7: Preferential Reassignment

Proposed Special Instruction No. 7 read: "Disabled employees seeking accommodation are entitled to preferential consideration for reassignment to vacant positions for which they qualify without having to compete for the position against other employees."

The court did not err in refusing this instruction because the court gave the essence of this instruction when it told the jury that "[r]eassigning an employee to a vacant position" may be a reasonable accommodation. Moreover, on the record before us, there is no showing the failure to give this instruction was prejudicial. The undisputed evidence showed there were two

27

open positions at the Wildomar facility. One of the open positions was a promotion, and an employer is not required to offer a promotion to a disabled employee as an accommodation. (See *Nealy*, *supra*, 234 Cal.App.4th at p. 377.) As to the other open job, the evidence showed that this job required technical skills that Martinez did not have. As Martinez concedes, a disabled employee is entitled to preference for an open job only if the employee was qualified for that job.

Additionally, Martinez did not meet her prejudice burden because she did not designate the closing arguments to be included in the appellate record. There is no showing that Martinez's counsel argued to the jury that SCE was required to give preference to Martinez as to those two jobs, and thus that a jury would have decided any differently on this issue. Moreover, to the extent her counsel did make this argument, we presume both counsel correctly explained to the jury the extent of an employer's obligation to provide preferential consideration to an employee, and thus we cannot conclude the jury was misled in any way on this subject. Without a transcript of the closing arguments, we cannot accurately assess the potential impact of the requested instruction or the prejudice that might have been caused by its absence.

### E. Special Instruction No. 8: Employee's Voluntary Actions

Proposed Special Instruction No. 8 read: " 'The cause or trigger of an employee's need for accommodation does not matter, employers must accommodate disabilities even where the need for accommodation may have resulted from the employee's voluntary action.' " Martinez argues this instruction was necessary because the jury erroneously believed she was not entitled to recover on her claims because her voluntary move created the need for an accommodation.

28

The court properly refused this instruction because it is not a proper statement of the law as applied in this case. Moreover, there is no basis in this record for finding the jury was misled or did not apply the correct law pertaining to Martinez's move to Murrieta.

Martinez testified during her direct examination that before her move she was told by her SCE supervisors that she could not relocate to a different office if she moved because she needed to remain with the physical files and her work team. Several months later, Martinez moved her residence 45 miles from her assigned work office and then asked to relocate based on a condition she purportedly knew about for nine years before she moved (having panic attacks while driving on the freeway). These facts were certainly relevant to SCE's review of Martinez's relocation request, and to the jury's assessment of whether Martinez engaged in good faith discussions to find an appropriate solution to her accommodations request.

In support of her proposed instruction, Martinez cites to a statement in a Rutter Group treatise that the "cause of an individual's impairment is irrelevant" and that "the ADA may cover impairments that an individual's *volitional* acts cause or contribute to (e.g., cancer resulting from cigarette smoking)." (Chin et al, Cal. Prac. Guide Employment Litigation (The Rutter Group 2020) § 9:285.) This statement is made in the portion of the treatise discussing the definition of a disability within the meaning of the ADA. In this context, we agree that if a person has a physical or mental disability, it generally does not matter whether the *cause* of *that disability* resulted from voluntary behavior.

But the issue posed by Martinez's requested instruction is different. The question is not whether some voluntary conduct by Martinez caused her panic attack disorder and thus created her mental health disability. The jury

29

found Martinez had a covered disability, and that finding has never been challenged. Instead, it is whether her voluntary conduct (moving far away from her place of employment), was the cause of her claimed need for an accommodation. In analogous circumstances, the courts have recognized that an employee's voluntary conduct *unrelated to a disability* may be relevant to the reasonableness of the employer's response and willingness to accommodate the claimed disability. (See *Alamillo v. BNSF Ry. Co.* (9th Cir. 2017) 869 F.3d 916, 922 [" ' "reasonable accommodation" does not include excusing a failure to control a controllable disability' "].) In this case, Martinez's decision to move to a home that required a long drive on the freeway was relevant to (although not dispositive of) the jury's consideration of her disability-accommodation claim.

Martinez additionally argues the court erred in refusing to adopt her proposed instruction because without the instruction the jury erroneously believed the sole issue before it was whether her voluntary move was reasonable. The record does not support this claim. The jury was fully instructed on the elements of the disability accommodations claim under the CACI instructions, and these instructions did not state or suggest such a rule. Further, without a transcript of the closing arguments, we have no basis to conclude the jury was misled by SCE's counsel on this issue.

To support her contention that the jury was "improperly focused" solely on her voluntary move, she points to two questions asked by the jurors during her case-in-chief. The first question was why Martinez did not back out of buying her new home before escrow closed once she realized the difficulty of her new commute. The second question, put to Martinez's supervisor, asked, "When did . . . Martinez start looking at houses, if you know?"

30

As noted, pursuant to the court's policy, the jurors submitted written questions during the course of the trial and counsel had the option whether to ask those questions of the witnesses. Martinez's counsel elected to ask these two questions of the witnesses. But a juror's question during trial *before the jury is instructed*, does not establish the juror accepted any arguments or evidence before the deliberations began. The juror questions reflected natural curiosity about a puzzling fact. To the extent Martinez believed these questions showed the jury's attention was improperly focused on the move, her counsel had ample opportunity to discuss this issue with the jury during closing arguments, and we presume her counsel did so.

## DISPOSITION

Judgment affirmed. Martinez to bear SCE's costs on appeal.

HALLER, J.

WE CONCUR:

HUFFMAN, Acting P. J.

GUERRERO, J.

31